IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTINE W.,[1]                        No. 6:22-cv-00358-HZ

        Plaintiff,                 OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Nancy J. Meserow
7540 SW 51st Ave.
Portland, OR 97219

    Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Noah Schabacker
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Balitmore, MD 21235

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kristine W. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 18, 2018, alleging an onset date of December 21, 2017. Tr. 19.[2] Plaintiff's date last insured ("DLI") is March 31, 2024. Tr. 21. Her application was denied initially and on reconsideration. Tr. 107, 133.

On February 10, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 50. On March 25, 2021, the ALJ found Plaintiff not disabled. Tr. 41. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on familial Mediterranean fever, monoclonal paraproteinemia, migraines, small fiber neuropathy, cryopyrin associated periodic syndrome, hypersomnolence, pancreatic insufficiency exocrine, generalized anxiety disorder, and

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

depression. Tr. 281. At the time of her alleged onset date, she was 40 years old. Tr. 39, 223. She has a high school degree, completed four or more years of college, and has past relevant work experience as an admitting clerk and software engineer. Tr. 39, 282.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

At step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of December 21, 2017. Tr. 21. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine with fusion, cryopyrin associated periodic syndrome/familial Mediterranean fever, migraine, small fiber neuropathy, bipolar disorder, anxiety disorder, and post-traumatic stress disorder." Tr. 21. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "a range of sedentary work" as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for about two hours total in an eight-hour workday. She can sit for about six hours total in an eight-hour workday. She can occasionally reach overhead bilaterally. She should avoid even moderate exposure to extreme cold, working at unprotected heights, or around dangerous, unprotected major manufacturing machinery. She is able to understand, remember and carry out simple routine tasks that can be learned and mastered in up to 30 days or less. At such levels, she is able to maintain concentration, persistence and pace within

customary norms, make simple work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

Tr. 24. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 39. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "document preparer," "trimmer," and "router clerk." Tr. 40. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 41.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

///

///

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) failing to adequately consider whether Plaintiff's migraines equal Listing 11.02; and (3) failing to adequately analyze medical opinion evidence. Pl. Br. 1-2. Plaintiff argues that the case should be remanded for immediate payment of benefits. *Id.* at 34. The Commissioner concedes that the ALJ's decision is not supported by substantial evidence but argues that the case should be remanded for further proceedings. Def. Br. 5. Because Plaintiff's migraines equal Listing 11.02, the Court agrees with Plaintiff.[3]

**I.    Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to provide legally sufficient reasons to reject her subjective symptom testimony concerning her migraines. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

---

[3] Because the ALJ's analysis of Plaintiff's migraines is dispositive in this case, the Court focuses its discussion on the alleged errors only as they pertain to Plaintiff's migraines.

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that on "[b]ad days" Plaintiff required earplugs in a darkened room, in bed, away from family to manage her migraines. Tr. 62-63. She stated her migraines occur ten to twenty days per month and working even a simple job during a migraine "would be excruciating." Tr. 65-66. Plaintiff testified that she likes listening to audiobooks with "very, very low volume . . . [with her] eyes closed" in order to enjoy them. Tr. 75. Plaintiff noted that her migraines include "sensitivity to light, sensitivity to noise, eye pain/pressure, nausea, need to rest in a quiet dark room – lasting more than 1 day" and headaches "lasting 1-3 hours" on her function report. Tr. 326.

The ALJ relied on conservative treatment and Plaintiff's activities to discount Plaintiff's migraine symptom testimony. Tr. 26-27. The ALJ noted that Plaintiff's migraines improved in January 2020 from using Aimovig. Tr. 27. The ALJ also wrote that "[a]lthough the claimant alleges that she is unable to stand noise given her migraines, she . . . testified that she is able to listen to audiobooks." Tr. 27.

These were not clear and convincing reasons to reject Plaintiff's testimony. The record shows Plaintiff claimed to find Aimovig helpful for her migraine treatment. Tr. 2269. However,

the record shows that just days later Plaintiff continued to experience headaches with visual disturbances ten to twelve days per month, her headaches lasted three days, and they caused her to fall down a flight of stairs and break her right big toe. Tr. 2282. Her prior records in 2018 note Aimovig "reduced her migraine days by half and certainly warrants continued use." Tr. 841. At the time, Plaintiff reported experiencing migraines "65% of the month" to her providers, thus the Aimovig reduced Plaintiff's headaches to "a quarter of the month rather than half." Tr. 864, 839. These records align with Plaintiff's testimony of experiencing 10-20 days with migraines per month and do not discredit Plaintiff's symptom testimony. Tr. 65-66.

Similarly, the ALJ misconstrues Plaintiff's testimony regarding her activities. Plaintiff specifically noted she could listen to audiobooks on very low volume. Tr. 75. Plaintiff's periodic enjoyment of an audiobook on low volume also does not discredit her subjective symptom testimony regarding her migraines. Thus, the ALJ erred in rejecting Plaintiff's testimony regarding her migraines.

## II.   Medical Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly consider the medical opinion of neurologist Mark Herring, M.D. Pl. Br. 14-29. New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§

404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Herring was Plaintiff's treating neurologist for her migraines. Tr. 677-713. Dr. Herring noted normal and abnormal examinations, including apparent neurological distress, exhaustion, and being tearful. Tr. 682, 687, 693, 699. Plaintiff complained of chronic daily headaches and severe migraines, as well as other pains, which Dr. Herring attempted to treat with varying doses of gabapentin, indomethacin, and others. Tr. 679, 682. Dr. Herring noted that Plaintiff's chronic migraine status had "deteriorated" and wanted her "evaluated at the university level." Tr. 682. At an appointment on February 22, 2018, Dr. Herring wrote that he discussed with Plaintiff her diagnoses and symptoms that "affect[ed] her ability to sustain work." Tr. 685. He opined that "she is effectively disabled by her chronic headaches as well as her neuropathic pain, fatigue, and malaise, etc. I cannot think of any work modifications that would allow her to

return to work." Tr. 685. Dr. Herring opined on Plaintiff's Disability Medical Request Form, also dated February 22, 2018, that Plaintiff's work activities were limited to "only as tolerated . . . preclud[ing] work activities." Tr. 677. Plaintiff's at home activities were limited to "only as tolerated, requiring significant periods of rest." Tr. 677. Dr. Herring concluded that Plaintiff was "[n]ot able to work, secondary to multiple ongoing neurological symptoms." Tr. 677.

The ALJ found Dr. Herring's opinion unpersuasive because it did not identify specific functional limitations, was not supported by his own findings or the overall record, relied on Plaintiff's subjective reports, and conflicted with Plaintiff's activities. Tr. 35, 36.

Substantial evidence does not support the ALJ's decision. First, Dr. Herring's opinion that Plaintiff requires "significant periods of rest" is a specific limitation an ALJ can include in an RFC determination. Tr. 677; *see Smith v. Kijakazi*, No. 21-53652, 2022 WL 2703603, at *1 (9th Cir. July 12, 2022) (holding that the ALJ included physician's limitation of "reasonable rest breaks" by noting "regularly scheduled breaks" in the RFC). As noted above, Dr. Herring's opinions aligned with and were based on his own medical findings and did not solely rely on Plaintiff's subjective reports. Tr. 729, 758, 968, 2044, 2050-52, 2058-59, 2283, 2286-87, 2293-94. Dr. Herring's opinions also do not conflict with other physicians' opinions in Plaintiff's medical records, which include complaints of chronic headaches, migraines, and noted pain and exhaustion. Tr. 636, 736, 761, 767, 779-80.

Second, Dr. Herring opined that Plaintiff "is effectively disabled by her chronic headaches as well as her neuropathic pain, fatigue, malaise, etc. I cannot think of any work modifications that would allow her to return to work." Tr. 761. He noted Plaintiff's pain "precludes work activities" and she could participate in activities "only as tolerated, requir[ing] significant periods of rest." Tr. 677. Dr. Herring specifically noted that his opinions were based

on Plaintiff's reports and his own observations and examinations (including pain during appointments, gait imbalances, photophobia, and ptosis), Plaintiff's failed responses to medications, and stated that Plaintiff's pain "is not something one can measure on exam." Tr. 729, 758, 968, 2044, 2050-52, 2058-59, 2283, 2286-87, 2293-94.

Finally, the ALJ opined that Plaintiff's ability to take long flights and travel conflicts with Dr. Herring's opinions. Tr. 35. However, Dr. Herring addresses Plaintiff's vacations in his records, particularly one in which she went to urgent care regarding a severe headache in order to receive treatment before leaving. Tr. 679. Further, Plaintiff's ability to take occasional vacations and receiving urgent care treatment to relieve a severe migraine do not conflict with Dr. Herring's opinions that Plaintiff has chronic headaches and migraines not effectively treated by medication. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ( "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." (internal quotations and citation omitted)). Plaintiff's vacations included trips to visit family in Florida, a cabin vacation in Southern Oregon in August 2019, and to Hawaii. Tr. 29. The record does not indicate that Plaintiff's headaches ceased during these vacations, that Plaintiff was abnormally active or more active on these vacations, nor that Plaintiff discontinued her regular medications or treatments during trips. Tr. 679 (Dr. Herring noted that "a week after stopping indomethacin . . . she began to experience an unrelenting headache which ultimately required a trip to urgent care after a call here. She is back to having some degree of headache on a daily basis . . . ."); Tr. 10 (Plaintiff's husband stating that she "takes prescription drugs and muscle relaxers to get her on a plane and remain comfortable . . . . There is always downtime and I . . . plan and do everything to make it as easy as possible on [Plaintiff] . . . . Her job is to rest, soak up the warm[th] and heal which her

doctors support and encourage."). The record indicates that warmth, including trips to warmer climates, made Plaintiff more comfortable regarding her pain symptoms. Tr. 10, 11 97, 494, 1206, 2538 ("When she travelled to Florida for 2 weeks she felt better immediately."). The ALJ acknowledged this by including a limitation to "avoid even moderate exposure to extreme cold" in Plaintiff's RFC. Tr. 24. Because the ALJ failed to provide substantial evidence to support finding Dr. Herring's opinions unpersuasive, the Court finds the ALJ erred.

### III. Listing 11.02

Plaintiff argues the ALJ erred by failing to address her migraines under Listing 11.02. Pl. Br. 1. Defendant responds that the ALJ was not required to articulate or explain her reasoning in determining that Plaintiff's migraines did not equal Listing 11.02, and Plaintiff did not provide evidence "to overcome the strong presumption that the ALJ did exactly what she said," which was to consider the evidence pursuant to the Social Security Rulings. Def. Br. 6.

If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, she is presumed disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). Finally, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v.*

*Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id*.

The ALJ provided no analysis of Listing 11.02B despite finding that Plaintiff's migraines constituted a severe impairment. Tr. 21. Rather, in discussing the listed impairments and Plaintiff's headaches, the ALJ simply writes: "The evidence also does not satisfy listing 11.02, which was considered per SSR 19-49." Tr. 22.

The ALJ erred by failing to discuss whether Plaintiff's migraines met or equaled Listing 11.02B after finding migraines were a severe impairment. *See Jones v. Comm'r of Soc. Sec.*, No. 1:19-CV-00109-REB, 2020 WL 7029143, at *5 (D. Idaho Nov. 30, 2020) (concluding that a finding that the plaintiff's migraines were a severe impairment "coupled with the SSA's ... direction on analyzing migraine headaches vis à vis Listing 11.02, establishes that the ALJ erred in evaluating Petitioner's migraine headaches at step three of the sequential process by not considering Listing 11.02"); *Rader v. Comm'r of Soc. Sec.*, No. 2:17-CV-00131-CWD, 2018 WL 4087988, at *4 (D. Idaho Aug. 27, 2018) (same); *Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-CV-01373-HZ, 2017 WL 1927926, at *3 (D. Or. May 10, 2017) (same). The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ's conclusory statement that "the evidence fails to demonstrate that the claimant's headaches medically equal a listing" is not sufficient. *See id.* ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."). This is especially so where, as here, the body of the ALJ's opinion lacks a robust discussion of Plaintiff's headaches. Thus, the ALJ committed harmful error by not discussing Listing 11.02. *See Brown-Hunter v. Colvin*,

806 F.3d 487, 494 (9th Cir. 2015) (citations omitted) (an error is harmless if it is "inconsequential to the ALJ's ultimate nondisability determination" or if, despite any legal error, "the agency's path may reasonably be discerned").

In addition, substantial evidence in the record supports the conclusion that Plaintiff equals the requirements for Listing 11.02. There is no medical listing for migraines or headaches. However, Listing 11.02 is the appropriate listing for an equivalence analysis. SSR 19-4p instructs the ALJ on how to evaluate whether a claimant's migraines are equal in severity and duration to the criteria in Paragraph B of Listing 11.02. It states:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p at 4.

Plaintiff tracked her headaches using a phone app recommended by her doctors, and her records report headaches lasting for hours to multiple days for more than half of the month. Tr. 489, 679, 685, 694-95, 719, 761, 781, 898-99, 904, 907, 916, 922, 965-66, 968, 3007. Plaintiff's records from her physicians establish that her migraines include photophobia, phonophobia, sharp pain, abnormal smells, fatigue, and pulsing and "aura type headaches" across her head. Tr. 691, 697, 700-01, 707, 711, 883-84, 898-901, 905-08, 913, 919-20, 922-26, 2048, 2050. Her migraines were noted by physicians during physical examinations on several occasions. Tr. 894,

906, 961, 968, 2009, 1417, 2043-44, 2050-51, 2058, 2282, 2285. Plaintiff's treatment included Aimovig, Dexamathasone, and Imitrex, and her providers noted no noncompliance by Plaintiff. Tr. 826, 830-34, 840-41, 864, 891-92, 898-99, 902, 909, 959, 2040, 2061, 2270, 2287, 2438. Plaintiff's medications caused grogginess, drowsiness, difficulty concentrating, and oversleeping. Tr. 307, 322, 324, 327, 329, 343-45, 487, 528, 748, 1402, 1418, 2014, 2030, 2094, 2487, 2663, 2880. Her pain levels varied from moderately severe to severe. 679, 968, 2270, 2880, 2887. She reported needing to retire to a darkened room with little to no sound, being unable to drive while having a migraine, and requiring frequent breaks or naps during the day. Tr. 677, 828, 842, 849, 856, 865, 898-99, 959-60, 968, 1417-18, 1451, 1463, 1470, 1483, 1485, 1496, 1557, 1630, 1641, 1708, 1772, 1945, 2013, 2042, 2048, 2070, 2265, 2282, 2285, 2422, 2689, 2695, 2722, 2730, 2880. Accordingly, the record demonstrates that Plaintiff's impairment satisfies paragraph B of Listing 11.02.

**IV.     Remand**

The parties dispute whether this case should be remanded for further proceedings or immediate payment of benefits. Except in rare circumstances, remand for further proceedings is the appropriate course of action. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100–01 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the

claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Remand for payment of benefits is the proper course in this case. As discussed above in Part III, the record establishes that Plaintiff meets the requirements for Listing 11.02. The record is fully developed on this issue, and there are no conflicts in the record. Because evidence demonstrates that Plaintiff meets Listing 11.02B, she is "presumed disabled, and no further inquiry is necessary." *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). Remand for additional proceedings would serve no purpose and "would needlessly delay effectuating the primary purpose of the Social Security Act," which is "to give financial assistance to disabled persons. . . ." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Accordingly, the Court reverses the Commissioner's decision and remand for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

Dated: _____August 31, 2023_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge